UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AYANNA JOHNSON, on behalf of her daughter, A.H., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:17 CV 2204 SNLJ |
| ST. LOUIS PUBLIC SCHOOL DIST., | ) ) | |
| Defendant. | ) | |

### MEMORANDUM and ORDER

This matter is an appeal of an administrative decision pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Plaintiff is the mother of A.H., who is a teenager enrolled in the St. Louis Public School District ("District"). A.H. has medical diagnoses of schizophrenia, major depressive disorder, and autism. A.H.'s educational diagnosis is emotional disturbance. Plaintiff filed a due process complaint pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., asserting that the District denied A.H. a free and appropriate public education ("FAPE") in violation of IDEA. Plaintiff appealed the administrative decision to this Court pursuant to 20 U.S.C. § 1415(i)(2)(A).

I. **Factual Background**

At the time of the 2017 administrative hearing, A.H. was a 14-year-old girl enrolled as a ninth grader at Sumner High School in the St. Louis Public School District. Plaintiff's initial evaluation for special education services was completed when A.H. was

1

in fifth grade.  She was found eligible for services with a Specific Learning Disability in the areas of reading comprehension and mathematic reasoning.  At that time, A.H. had been medically diagnosed with Depression and Autism Spectrum Disorder.  A.H.'s first Individualized Education Program ("IEP") was drafted at the end of her fifth grade year (in 2013) and called for A.H. to be in a regular classroom for at least 80% of the school day and for 180 minutes per week of specialized reading and math instruction.

In sixth grade, A.H.'s IEP noted that her math and reading skills had improved.  The 2014 IEP called for 300 minutes of specialized instruction per week and at least 80% of her time in the regular classroom.

In January 2015, in seventh grade, A.H. was found to be no longer eligible for services based on a diagnosis of Specific Learning Disability.  Instead, she was eligible for services based on a diagnosis of Emotional Disturbance.  The January 2015 evaluation noted the Depression and Autism medical diagnoses and that A.H.'s parent had reported a diagnosis of attention deficit hyperactivity disorder ("ADHD").   Her seventh grade IEP noted that A.H. could read words at a fifth-grade level but comprehended on a third-grade level.  This IEP included a Behavior Intervention Plan ("BIP") to address A.H.'s visual and auditory hallucinations, growing paranoia, and difficulty distinguishing fantasy from reality.

In the fall of 2015 --- in the beginning of eighth grade --- A.H. was diagnosed with Schizophrenia.  The eighth grade IEP (dated February 2016) moved A.H.'s placement from a regular classroom at least 80% of the time to a regular classroom just 40% of the

time because the IEP team concluded that "a more restrictive setting [was] necessary." This IEP recognized A.H.'s diagnoses of Autism Spectrum Disorder, Major Depressive Disorder, and Schizophrenia and noted that A.H.'s parent wanted her to attend a small high school in the fall. The IEP also noted A.H.'s hallucinations. A BIP stated that the school counselor would review and monitor a journal that A.H. was to keep, but there was no evidence about the journal entries or progress in the record.

Under that IEP in a self-contained eighth grade classroom, it appears that A.H. began to do better both academically and behaviorally. Bullying toward A.H. decreased, and A.H.'s grades improved.

Then A.H. started high school at Sumner High School in August 2016. The February 2016 IEP from eighth grade was to carry over to Sumner such that she should be in a self-contained setting. However, for some period of time at the beginning of the school year, A.H. was not in a self-contained setting while the team at Sumner set up the self-contained classroom. A.H. was also assigned to two general education classes --- JROTC and Art. A.H. was scheduled to be in a regular classroom less than 40% of the time.

During that first semester of high school, A.H.'s psychotic symptoms increased. She had more frequent interactions with imaginary friends, and she became aggressive and suicidal at times. On November 14, 2016, two of A.H.'s doctors submitted a joint letter to the school recommending A.H.'s transfer to a therapeutic school setting. The IEP team met in December and requested medical records for A.H. The district's

psychological examiner Meghan Bradshaw spoke with A.H.'s psychologist, Dr. Knipp, and reported that school personnel had not seen evidence of A.H.'s hallucinations. Dr. Knipp suggested that Bradshaw sit one on one with A.H. in order to observe the hallucinations.

Bradshaw reported on her conversation with Dr. Knipp to the IEP team on December 20, 2016 and suggested re-evaluation of A.H. Also at that meeting, plaintiff Johnson, through legal counsel, requested that A.H. be placed in a private separate day facility. A.H.'s safety plan was revised to reduce unsupervised contact with the general student population. At the meeting, it became apparent that A.H. was not presented with the aggressive behaviors at school that she was presenting at home. The District proposed reevaluating A.H. on January 30, 2017, because A.H. had not been evaluated since the Schizophrenia diagnosis. Plaintiff Johnson consented to the evaluation.

In February, A.H. was involved in a nonphysical altercation with another student from the self-contained classroom in which A.H. was threatened with physical violence. A.H. was separated from the other student and not disciplined. In March, due to A.H.'s worsening symptoms, A.H.'s psychiatrist began transitioning her to an older anti-psychotic medication no longer in frequent use due to serious long-term side effects.

The District's evaluation was complete in March 2017. During the examinations, A.H. hallucinated her imaginary friend, "Ashley," and she exhibited other symptoms of her schizophrenia. Academically, it was reported that her reading level had gone down from a third-grade level to first-grade level. There is also evidence that A.H.'s hygiene

4

had declined since she started high school. At the March 9, 2017 meeting between plaintiff Johnson and District representatives, plaintiff made it known that she preferred to have A.H. moved to a separate, private placement.

The March 9, 2017 IEP acknowledged A.H.'s psychological diagnoses and social problems. It set out six goals: (1) address weakness in written expression, (2) math skills, (3) basic reading skills, (4) reading comprehension, (5) advancement through high school and developing prevocational skills, and (6) socialization skills. The IEP also includes a BIP that addresses A.H.'s schizoaffective disorder and negative perceptions of school that she may have with therapeutic counseling.

On March 17, 2017, plaintiff Johnson filed a due process complaint alleging that the District denied A.H. a FAPE because the District placed her in classes with large groups of non-disabled peers after determining that A.H. required a self-contained setting and because the District did not modify her IEP to adopt and implement goals, objectives, a BIP, and/or a safety plan to address A.H.'s schizophrenia. Plaintiff also asserts that the District denied A.H. a FAPE because it ignored her active hallucinations by leaving her in a non-therapeutic setting.

An administrative hearing was set for April 25, 2017. On that day, the Commission granted the District's motion for a continuance over A.H.'s mother's objection. The District sought a continuance because, five working days before the April 25 hearing date, plaintiff provided nearly 800 pages of medical records that had not previously been provided to the District. The District at first objected to the admission of

5

those records --- identified as "Exhibit 5" --- because its programming and placement decision-making process had not had the benefit of the information contained in those documents. The Commission thus permitted the District to reconvene A.H.'s IEP team so that they could consider those documents and, if appropriate, revise the IEP.

The District reconvened the IEP team, and another IEP was formulated. According to the District, Exhibit 5 showed that there were significant stressors in A.H.'s home, including a shooting hear her home, concerns the family might have to move, strife between plaintiff and plaintiff's mother (A.H.'s grandmother), physical altercations between plaintiff and A.H., a change in psychiatrists, and multiple medication changes. The May 2017 IEP showed that the District recommended that A.H.'s placement be changed to a private separate day facility. The District also agreed to provide additional compensatory services to A.H. The District issued a Notice of Action proposing placement at Great Circle, one of the two private schools mentioned in plaintiff's due process complaint prayer for relief. The District also indicated that it was open to discussing other private school options. However, under the IDEA's "stay put" provision, the District had not as of the hearing date changed A.H.'s placement to the private facility.

At the May 22, 2017 hearing, the Commission heard testimony from the plaintiff, A.H.'s mother. She testified that she wanted her daughter placed at the Giant Steps facility. She testified that A.H. had been depressed from the very beginning of school,

6

that her hallucinations had increased, and that she had had physical altercations with her daughter.

A.H.'s treating psychologist, Dr. Vivian Knipp, also testified. Knipp testified that when A.H. is doing well, she realizes her hallucinations are not real. She also stated that A.H. finds school to be very stressful, and that stress increases her hallucination symptoms. Knipp believes that A.H. needs very small classes with one-on-one instruction to remedy her academic and behavioral setbacks. Dr. Knipp relied substantially on Exhibit 5 to refresh her recollection during her testimony.

A.H.'s counselor, Tanya Coates, also testified similarly to Knipp and testified she hoped that A.H. would be placed in a therapeutic school.

The Commission made several evidentiary rulings. First, the District moved to exclude Exhibit 5 because those documents were not before the IEP team on March 9, 2017. The Commission denied the motion because it was unclear that Exhibit 5 consisted solely of documents the district had never seen and also because it contained valuable background information regarding A.H.'s medical conditions. Second, A.H.'s mother moved to exclude the May 3, 2017 IEP, all testimony regarding that IEP, and any information or testimony regarding what the District planned after the due process complaint was filed. The Commission denied the motion and admitted the IEP because it was relevant to the question of what services were available and at the disposal of the District. Third, the Commission sustained the objection to testimony related to whether the May 2017 IEP provided a FAPE because "an IEP must take into account what was,

and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 992 (1st Cir. 1990).

Plaintiff asserted that the District failed to provide A.H. with a FAPE in two ways. First, she states the District, having decided that a low level of interaction between A.H. and her non-disabled peers was appropriate, placed A.H. in two general education classes, and in doing so denied A.H. a FAPE because the general high school environment was a trigger for the symptoms of her schizophrenia. Second, plaintiff contends that A.H.'s March 9, 2017 IEP did not adequately address A.H.'s diagnosis of Schizophrenia and that in implementing the IEP, school officials and teachers ignored A.H.'s symptoms that could have been more appropriately attended to in a therapeutic setting.

The Commission denied plaintiff's due process claim on both counts. Plaintiff appealed the decision to this Court. Plaintiff's complaint seeks a declaratory judgment that the District's substantive educational and due process practices, policies, procedures, and conditions violated plaintiffs' rights as secured by IDEA (#1 at ¶ 73(b)). Plaintiff also seeks an injunction enjoining the District from continuing to violate plaintiffs' rights under IDEA, requiring the District to provide plaintiff the relief sought at the due process hearing, and requiring the Board to make plaintiffs whole by awarding compensatory education and/or educational services she would have received in the absence of the

district's conduct. (*Id.* ¶ 73(c-e)). Plaintiff also requests attorney fees and costs. (*Id.* ¶ 73(f).)

The parties have cross-moved for judgment on the administrative record.

## II. Standard of Review

"In an IDEA case where there are no procedural issues, the statute authorizes judicial review of the state hearing officer's 'determination of whether the child received a [FAPE].'" *Parrish v. Bentonville Sch. Dist.*, 896 F.3d 889, 894 (8th Cir. 2018); 20 U.S.C. § 1415(f)(3)(E)(i). "Because judges are not trained educators, judicial review under the IDEA is limited." *Pachl v. Seagren*, 453 F.3d 1064, 1068 (8th Cir. 2006) (quoting *E.S. v. Indep. Sch. Dist., No.* 196, 135 F.3d 566, 569 (8th Cir. 1998)).

The IDEA requires that states receiving federal funds for educating children with disabilities "must provide a free appropriate education --- a FAPE, for short --- to all eligible children." *Endrew F. ex rel. Joseph F. v. Douglas County Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). The individualized education program, or "IEP," is the "centerpiece of the statute's education delivery system for disabled children." *Honig v. Doe*, 484 U.S. 305, 311 (1988). "The IEP is the means by which special education and related services are tailored to the unique needs of a particular child." *Endrew F.*, 137 S.Ct. at 994 (internal quotations omitted). When educators and parents disagree about what a child's IEP should contain, the "parents may turn to dispute resolution procedures established by the IDEA." *Id.* "At the conclusion of the administrative process, the losing party may seek redress in state or federal court." *Id.* (citing 20 U.S.C. §

1415(i)(2)(A).) "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 999.

"Whether a school district provided a child with a FAPE is reviewed de novo." *Parrish*, 896 F.3d at 894 (citing *I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.*, 863 F.3d 966, 970 (8th Cir. 2017)). "The reviewing court must give due weight to the outcome of the administrative proceedings." *Id.* (internal quotations omitted). The Supreme Court has recently affirmed that "[a]ny review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Id.* (emphasis in original) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206-07 (1982)).

### III. Discussion

The plaintiff's complaint before the Commission contended that the March 9, 2017 IEP failed to provide A.H. with a FAPE and requested A.H.'s transfer to a therapeutic setting for the remainder of the school year. To determine whether the Commission properly denied the complaint, the Court looks to the questions raised before the Commission. The issues presented in plaintiff's due process complaint --- and later refined in her pre-hearing statement (#12-4) --- are as follows:

1. Did the District deny A.H. a FAPE by "deciding that [A.H.] required a more restrictive placement with smaller groups of students but still exposing her to

large groups of her peers in auxiliary classes multiple times per week?" (#12-1 at 9.)

2. Did the District deny A.H. a FAPE because it left her in a nontherapeutic setting and did not modify her IEP to adopt and implement goals, objectives, a BIP, and/or a safety plan to address A.H.'s schizophrenia (including hallucinations and delusions)?[1]

The Court thus addresses the two issues presented in turn.

A.     **Placement of A.H. in Classes with Large Groups of Peers**

A.H.'s March 2017 IEP called for her to be in the general classroom 40% of the time. Plaintiff contends the District denied A.H. a FAPE "by exposing her to large groups of her peers in the auxiliary classes multiple times per week" despite "deciding that [she] required a more restrictive placement with smaller groups of students."

The IDEA requires students receive an education in the "least restrictive environment." 20 U.S.C. § 1412(a)(5)(A). That requirement reflects a "strong preference" that children with disabilities "attend regular classes with children who are not handicapped." *Indep. Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 561 (8th Cir. 1996). As A.H.'s psychological condition progressed, her IEP increased her hours in special education instruction, moving her from the regular classroom 80% of the time to just 40% of the time. Although A.H.'s transition to high school was difficult because the school required some time to make adjustments to accommodate A.H.'s self-contained classroom requirement, that does not seem to be plaintiff's focus. Plaintiff's due process complaint instead appears related to A.H.'s placement in the general classrooms for Art

---

[1] Plaintiff's issues were initially presented in three parts. The plaintiff collapsed the second and third issues into one issue in her pre-hearing statement (#12-4 at 2-3).

and NJROTC. As the Commission couched it, the question was whether "the District offer[ed] a forward-looking IEP, reasonably calculated [to] allow A.H. to 'make progress appropriate in light of [her] circumstances?'" (#12-24 at 19 (quoting *Endrew F.*, 137 S. Ct. at 999).) The March 2017 IEP continued A.H.'s placement regular classes for 40% of the time and therefore required some time in regular classrooms. The District's actions were in keeping with that requirement. Moreover, the evidence showed that A.H. was doing well in those classes. The Court agrees with the Commission's ruling as to the first issue presented. To the extent plaintiff contends that A.H.'s IEP should have called for 0% of the school day in a regular classroom, the Commissioner found that the District officials used their best professional judgment to appropriately balance A.H.'s curriculum to meet her needs. The evidence also supports that conclusion.

> **B. Modification of IEP to Address Schizophrenia Diagnosis and Failure to Remove A.H. from Nontherapeutic Setting**

As for the claim that the District denied A.H. a FAPE by failing to address A.H.'s schizophrenia or hallucinations in its IEP and by failing to move her to a therapeutic school,[2] the March 9, 2017 IEP was created for the very purpose of recognizing and responding to A.H.'s schizophrenia. Dr. Knipp sent a letter in November 2016 suggesting a change of placement to a therapeutic school such as Logos, and, in response, the District initiated communication with Dr. Knipp and plaintiff Johnson and conducted

---

[2] Plaintiff suggests that the District ignored a duty to seek out relevant information about A.H. from doctors, such as the medical records in Exhibit 5 that the District did not see until five days before the first hearing date (when the records were submitted by plaintiff in support of the due process complaint). Although the IDEA imposes an affirmative obligation on the District to identify, locate, and evaluate children with disabilities in their jurisdiction, 34 C.F.R. § 300.111, once a child is identified and evaluated, the formulation of an IEP is intended to be collaborative. 34 C.F.R. §§ 300.343(b)(2), 300.346(a)(1). "The parents, the child's teacher, and a school official knowledgeable about special education must be included on the team which devises and reviews the IEP, and parents are free to invite other individuals with expertise to participate." *Gill v. Columbia 93 Sch. Dist.*, 217 F.3d 1027, 1034-35 (8th Cir. 2000). The District did speak with A.H.'s psychologist, and, as a result, requested a re-evaluation of A.H..

a complete re-evaluation of A.H. Again recognizing the strong preference to educate A.H. among her non-disabled peers, the District proposed a 30-day trial period during which A.H. would remain at Sumner with additional services of a therapeutic counselor.

This Court is mindful that its "review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Endrew F.*, 137 S.Ct. at 999 (emphasis in original). Over the years, the District made incremental changes to A.H.'s IEP in an attempt to advance A.H.'s education while keeping her in the general classroom. The March 2017 IEP was tailored to A.H. and recognized the unique challenges she faced at school.[3] Dr. Knipp's testimony at the hearing explained why observers of A.H. in the school environment would not see the same symptoms that A.H. exhibited at home or one-on-one. (*See* #12-24 at 22.) That the District ultimately issued a new IEP when presented with A.H.'s complete medical records, proposing A.H.'s transfer to a therapeutic school, does not render the District's March 2017 IEP defective. *See Gill v. Columbia Sch. Dist.*, 1999 WL 33486650, at *2 (W.D. Mo. 1999), *aff'd*, 217 F.3d 1027 (8th Cir. 2000) ("An IEP must be evaluated as of the date it is offered. It cannot be evaluated on the basis of facts and circumstances which became known after that date.") (citing *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir.1993)).

---

[3] Notably, the District points out in its pre-hearing briefing that the IDEA does not require that an IEP include a safety plan and that, regardless, the District had developed a safety plan for A.H. independent of the IEP. (#12-21.) Plaintiff does not suggest otherwise.

Accordingly,

IT IS HEREBY ORDERED that defendant's motion for judgment on the pleadings (#21) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for judgment on the pleadings (#23) is DENIED.

Dated this __14th__ day of September, 2018

```
_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE
```